**UNITED STATES DISTRICT COURT**
**EASTERN DISTRICT OF TENNESSEE**
**AT KNOXVILLE**

| | | |
|---|---|---|
| UNITED STATES OF AMERICA | ) | |
| | ) | |
| v. | ) | NO. 3:17-CR-00131-TAV-CCS |
| | ) | |
| DUSTIN SCHAUD FOX | ) | |

**MOTION FOR DOWNWARD DEPARTURE AND/OR VARIANCE**
**AND**
**SENTENCING MEMORANDUM**

Comes the Defendant, Dustin Schaud Fox, by and through counsel and submits this Motion for Downward Departure and/or Variance and Sentencing Memorandum for this Honorable Court's consideration in Mr. Fox's sentencing hearing. In support of which the Defendant would show as follows:

## I.  FACTUAL BACKGROUND

Dustin Schaud Fox is before the Court in a two count Indictment issued on December 19, 2017 with Production of Child Pornography in violation of 18 U.S.C. § 2251(a) and Possession of Child Pornography in violation of 18 U.S.C. § 2252A(a)(5)(B). Mr. Fox pled guilty to both counts of the indictment on December 19, 2018. Mr. Fox was taken into custody on December 13, 2017 and has remained in federal custody since that date.

## II.  SENTENCING GUIDELINE ANALYSIS

The Initial Pre-Sentence Investigation Report (PSR) was completed on April 18, 2019 indicating a base offense level of 32, pursuant to U.S.S.G. § 2G2.1(a).  Additionally, the PSR set out a two point upward adjustment for the offense involving a minor who had attained the age of 12 but not attained the age of 16 years pursuant to U.S.S.G. § 2G2.1(b)(1)(B). The PSR set out a two point upward adjustment for an offense involving "sexual contact", identified in the PSR as based upon self-masturbation rather than contact

with an actual person pursuant to U.S.S.G. § 2G2.1(b)(2)(A). The PSR also contained an upward adjustment of four points for depiction of sadistic or violent materials pursuant to U.S.S.G. § 2G2.1(b)(4)(A). Additional upward adjustments of two points each were included for distribution pursuant to U.S.S.G. § 2G2.1(b)(3) and use of a computer or interactive computer service pursuant to U.S.S.G. § 2G2.1(b)(6)(B).

The PSR calculation for Count 1 was a level 44, and Mr. Fox was given a 3-point reduction pursuant to U.S.S.G. § 3E1.1(a) §3E1.1(b), resulting in a total offense level of 41. The PSR calculation contains additional calculation for Count 2, resulting in an offense level of 31, which following adjustment pursuant to § 3D1.4 resulted in a total adjusted offense level of 41. Based on this calculation, the PSR set out an original calculation of Mr. Fox's total offense level as a level 41 and a criminal history category of I, resulting in an advisory sentencing range of 324-405 months, statutorily capped at 360 months. Accordingly, the advisory sentencing guideline range applicable to Mr. Fox is 324 to 360 months imprisonment. The United States has agreed to recommend a sentence at the bottom of the advisory range which is 324 months. Additionally, the statutory minimum for this offense is 180 months and the statutory maximum is 360 months.

### III.     PERSONAL BACKGROUND

Dustin Fox is 29 years old and is the only child of Teresa Hurst and James Fox's marriage. Dustin has one half sibling from his father and two half siblings from his mother's subsequent relationships. Mr. Fox has been raised in the Knoxville area, only residing elsewhere briefly when he lived in England for one year.

Mr. Fox has attended some public schooling, interspersed with periods of home schooling and ultimately received his GED in lieu of a high school diploma. Mr. Fox was married to an older female when he was 17 years old and had a son shortly after the marriage. Ultimately the marriage ended in divorce, and Mr. Fox's son, now age 10, resides

2

with his mother in England. Other than the brief time he lived with his wife in England, Mr. Fox has never lived on his own and has struggled to maintain gainful employment.

## IV.     SENTENCING FACTORS TO CONSIDER

There are a litany of factors that must be considered in determining the appropriate sentence for Mr. Fox. First, the court must examine the appropriate guidelines and calculate the applicable range of punishment for the offense. As the Court is well aware, the United States Supreme Court deemed the Guidelines "effectively advisory" in United States v. Booker, after finding the mandatory nature of the Guidelines as previously imposed was a violation of the Sixth Amendment. United States v. Booker, 543 U.S. 220 (2005). The Court held that any sentence imposed must be viewed in light of its overall "reasonableness" as applied to the defendant in question. Id. While the courts are still required to calculate and consider the ranges of punishment as determined by the guidelines, they court may also "tailor the sentence in light of other statutory concerns" including consideration of the factors set out at 18 U.S.C. § 3553(a) in addition to bases for departures that are set out within the guidelines. Id. In United States v. McBride, the Sixth Circuit explained that "while the Guidelines remain important, they are now just one of the numerous factors that a district court must consider when sentencing a defendant." 434 F.3d 470, 475 (6th Cir. 2006).

Following the calculation of the appropriate guideline level and ranges, the court should look to any potential grounds for downward departure set out within the guidelines that may be applicable in a given case. Any factor or combination of factors may support downward departure, if it is not prohibited by the Guidelines and takes the case outside the "heartland of cases" contemplated within the guidelines. United States v. Coleman, 188 F.3d 354, 361 (6th Cir.1999) (en banc).

3

Next, the Court must examine the applicability of any grounds for an additional variance from the calculated guideline range in the instant case. Such grounds include any of the factors set out within 18 U.S.C. § 3553(a) however are not limited to those. After the Booker decision, "many of the very factors that used to be grounds for downward departure under the Guidelines are now considered by the district court—*with greater latitude*—under section 3553(a)." McBride, 434 F.3d at 476 (emphasis added). In fact, the Sixth Circuit points out "that there is not complete agreement among the courts over whether the Guideline-based 'departures' truly even exist at this point." Id. at 477. "The assertion that departures are obsolete has an element of truth—for there is now no mandatory guideline range from which to depart—and does properly shift the focus of our review to reasonableness." Id. A district court in the post-Booker era is mandated by Section 3553(a) to determining the appropriate sentence for a defendant based upon the totality of the circumstances surrounding the case and under the auspice of reasonableness. Included in this mandate is the instruction that the court "shall impose a sentence *sufficient, but not greater than necessary*, to comply with the purposes set forth" in the provision. 18 U.S.C. § 3553(a) (emphasis added).

Finally, after assessing the appropriate advisory range of punishment and addressing all of the enunciated factors for both departure and variance, the court may examine any additional factors in the case at issue that may be applicable or that would make the case one "outside the heartland" of cases that are contemplated by the specific section of the guidelines. The Supreme Court has indicated that "[i]t has been uniform and constant in the federal judicial tradition for the sentencing judge to consider every convicted person as an individual and every case as a unique study in the human failings that sometimes mitigate, sometimes magnify, the crime and the punishment to ensue." Koon v. United States, 518 U.S. 81, 113 (1996).

4

Applied to the instant case, Mr. Fox's unique personal background and history are relevant in giving some context to the offense conduct. When examining the totality of the circumstances including both the conduct and Mr. Fox personal history, the Court has sufficient information to depart downward from the advisory guideline range of 324 months to reach a sentence that is sufficient, but not greater than necessary to comply with the purposes of sentencing.

### A. <u>Grounds for Downward Departure</u>

Courts have recognized that two distinct types of departures exist under the United States Sentencing Guidelines, those that are specifically proscribed and those that are unguided. Based on this recognition, courts have been granted wide discretion to examine each case and defendant individually and apply grounds for departure that may be applicable based on the totality and uniqueness of the case. <u>See generally</u> <u>Koon v. United States</u>, 518 U.S. 81, 113 (1996). When examining each section of the guidelines, the Commission instructs courts to "treat each guideline as carving out a 'heartland'' which is a typical case that displays the type of conduct that the guideline describes. U.S.S.G., Chapter 1, Part A Introduction, 4(b) (Policy Statement) Departures. When a case arises that is outside this "heartland" or typical case that was contemplated by the guidelines as fashioned, a court has wide discretion to fashion an appropriate sentence through the use of departures. "When a court finds an atypical case, one to which a particular guideline linguistically applies but where conduct significantly differs from the norm, the court may consider whether a departure is warranted." <u>Id.</u>

In determining if a case merits a departure, a court may utilize any factors, other than those specifically prohibited by the guidelines, which may alone or aggregated establish a sufficient basis for departure."[T]he Commission does not intend to limit the kinds of factors, whether or not mentioned anywhere else in the guidelines, that could

5

constitute grounds from departure in an unusual case." Id; see United States v. Stewart, 154 F. Supp. 2d 1336, 1339–40 (E.D. Tenn. 2001). The United States Supreme Court and the Sixth Circuit have each approved of the evaluation of additional unlisted factors that may be guiding in granting departures so long as they are taken into account in the contemplation of the prohibitions and policy goals that are set out within the guidelines. See generally Koon v. United States, 518 U.S. 81, 95, 116 S.Ct. 2035, 135 L.Ed.2d 392 (1996); United States v. Coleman, 188 F.3d 354, 361 (6th Cir.1999) (en banc).

After determining the applicability of a departure, the Court must next address the degree or range that is appropriate to depart in light of the unique issues of the case. See United States v. Joan, 883 F.2d 491, 494 (6th Cir.1989). For example, the Sixth Circuit Court of Appeals approved of a departure of three levels based upon a seventy-two-year-old defendant's age, physical condition, lack of danger to the public, lack of flight risk, and relatively minor role in the offense. United States v. Sabino, 274 F.3d 1053, 1079 (6th Cir. 2001). In the instant case, the Court is faced with an atypical defendant along with a unique set of facts that remove this case from the "heartland" of cases that are contemplated by U.S.S.G. § 2G2.1.

## 1. Bases for Departure-Unguided

As previously noted, the Court is also permitted to engage in an "unguided" evaluation of additional bases for departure that are not necessarily proscribed within the guidelines. In examining the instant case, the Court is presented with a somewhat unique set of facts. The PSR sets out the relevant factual background, but in examining the totality of circumstances as it relates to sentencing purposes, a few facts are significant to highlight.

First, Mr. Fox's conduct is somewhat outside the typical factual scenario of a production offense with distribution enhancements. Notably, the criminal conduct at issue here involved an inappropriate online relationship between Mr. Fox who was 27 and the

victim who was 15 years old at the time of the offense. The central conduct involved communications for the most part between Mr. Fox and the victim. The two never met in person or made arrangements to meet to engage in sexual contact. Additionally, while there was enough to meet the statutory definition of "distribution", it is worth noting that the distribution via open live stream was limited in its scope, particularly when contrasted with other distribution offenses under this section. It is also significant to note that Mr. Fox did not engage in any distribution for personal pecuniary gain.

 As set out more fully below, Mr. Fox's personal history and background also help to lend some context to the conduct at issue in this case. Following forensic evaluation, Dr. Kathryn Smith noted that Mr. Fox has been struggling with undiagnosed depression and anxiety since childhood. She also notes that this paired with traumatizing sexual events in his youth culminated to produce deviant interests and a prolonged adolescence in Mr. Fox. Dr. Smith's report is attached as Exhibit A and is explained more fully below.

Accordingly, the specific facts in this case while egregious are somewhat outside the heartland of the typical production and distribution offenses that courts encounter. The unique situation here, paired with the additional factors set out more fully below, support the Court's ability to depart downward from the advisory sentencing guideline range of 324 months in this case.

### B. Grounds for Variance Outside Sentencing Range

As highlighted above, the Booker court in making the Guidelines advisory in nature, directed the court to a series of factors and considerations that should be examines in determining departures, variances, and the overall reasonableness of a sentence imposed. Specifically, courts have been directed to 18 U.S.C. § 3553(a) which provides a list of factors that are important to that determination, although not exclusive. The factors set out within that section provide in pertinent part as follows:

(1) the nature and circumstances of the offense and the history and characteristics of the defendant;
(2) the need for the sentence imposed--
> (A) to reflect the seriousness of the offense, to promote respect for the law, and to provide just punishment for the offense;
> (B) to afford adequate deterrence to criminal conduct;
> (C) to protect the public from further crimes of the defendant; and
> (D) to provide the defendant with needed educational or vocational training, medical care, or other correctional treatment in the most effective manner;
(3) the kinds of sentences available;
(4) the kinds of sentence and the sentencing range established for--
> (A) the applicable category of offense committed by the applicable category of defendant as set forth in the guidelines; or
> (B) in the case of a violation of probation or supervised release, the applicable guidelines or policy statements issued by the Sentencing Commission pursuant to section 994(a)(3) of title 28, United States Code, taking into account any amendments made to such guidelines or policy statements by act of Congress (regardless of whether such amendments have yet to be incorporated by the Sentencing Commission into amendments issued under section 994(p) of title 28);
(5) any pertinent policy statement;
(6) the need to avoid unwarranted sentence disparities among defendants with similar records who have been found guilty of similar conduct; and
(7) the need to provide restitution to any victims of the offense.

18 U.S.C. § 3553(a).

Additionally, the United States Supreme Court has provided some direction on downward variances. In Gall v. United States, the court directed appellate courts to "take the degree of variance into account and consider the extent of a deviation from the Guidelines," and "rejected an appellate rule that required 'extraordinary' circumstances to justify a sentence outside the Guidelines range." 128 S.Ct. 586, 594-95 (2007). In U.S. v. Long, 37 Fed. App'x 718 (6th Cir. 2002), the Court held that a sentencing court may depart from the applicable guideline range if the it finds "that there exists an aggravating or mitigating circumstance of a kind, or to a degree, not adequately taken into consideration by the Sentencing Commission in formulating the guidelines that should result in a sentence different from that described." Id.

In the instant case, an examination of Mr. Fox's personal history and background lend some level of context to the offense. Additionally, the statutory range of punishment established by Congress as it relates to this offense is 15 to 30 years. Accordingly, the fact that the guideline range in the PSR sets Mr. Fox essentially at the top of the sentencing range shows that there is a substantial basis for downward departure and/or variance in this case. While the offense conduct's seriousness cannot be understated, it is also essential to consider Mr. Fox's lack of criminal history, age as it increases potential for rehabilitation, and the fact that the conduct at issue was not for pecuniary gain. Comparing Mr. Fox's case to other production offenses creates a presumption that his conduct should not result in a sentence that is essentially the statutory maximum established by the legislature. Additional bases in support of departure and or variance from the advisory guideline range in the instant case as codified under § 3553(a) are set out below.

## 1. Nature and Circumstances of the Offense -18 U.S.C. § 3553(a)(1)

As noted previously, the seriousness of child pornography offenses cannot be understated. This seriousness is appropriately reflected by Congress' actions in establishing strict mandatory minimum sentences in these cases which are enhanced further for those offenders with prior convictions related to minors. See 18 U.S.C. § 2251.

Here, the Court is presented with an individual with no prior history who engaged in a pattern of criminal conduct over approximately a one to two-year period. Mr. Fox's conduct was related to an ongoing online relationship with a 15-year-old victim. Significantly, the criminal conduct at issue for this lead count took place within the context of this "relationship". While the conduct was certainly illegal, the 12-year age gap between the defendant and victim was not one that stood out to Mr. Fox, explained more fully by an analysis of his personal history as set out below. Additionally, the distribution in this

case is not what is typically encountered in these cases where images and videos are produced and uploaded or shared with others, rather the majority of the communications and images were shared between Mr. Fox and the victim, however there were some "live chats" where other individuals were permitted to join and watch.

While the nature of the offense is severe, the particular conduct that took place when examined in context is appropriately punished and reflected by the imposition of the mandatory minimum sentence in this case.

### 2. History and Characteristics of Defendant-18 U.S.C. § 3553(a)(1)

#### A. Mr. Fox's personal background , history, and characteristics

Mr. Fox is 29 years old and was born and raised in the Knoxville area. Significantly, Mr. Fox's personal history paints the picture of an individual who has generally been an introvert and has been unsuccessful in truly socializing or learning how to become a part of society outside his family.

Mr. Fox was evaluated at the request of defense counsel by Dr. Kathryn Smith, who submitted a forensic psychological report attached hereto as Exhibit A. Dr. Smith's report is insightful in giving some context to Mr. Fox's mental and emotional state as it relates to the offense conduct. Moreover, it helps to highlight some of the factors that have clearly contributed to Mr. Fox's psychological tendencies and impulses. Dr. Smith's report notes a history of atypical and inappropriate experiences very early in life that totally skewed any appropriate sexual norms or behaviors. Dr. Smith notes that an unhappy home life was an initial problem for Mr. Fox in the home, surrounded by constant arguing and lack of appropriate relationships with his parents. See Exhibit A p. 2. This was compounded by several periods of homeschooling that interrupted attempts at normal socialization with peers. Dr. Smith goes on to note that, "[w]hen Mr. Fox was seven, [his mother] told him

that she and his father had both been sexually molested and got into the specifics of what had happened to them." See Exhibit A at 2.

Significantly, Dr. Smith's report set out the following chronology of trauma that is enlightening in giving context to Mr. Fox's mental state and emotional immaturity:

> Despite his mother's efforts to protect him from being sexually abused, he was, in a very real sense, sexually traumatized at a young age. The first trauma occurred when his mother filled him in at age seven on the fact that she and his father had both been sexually abused as children by their grandparents. This act on his mother's party may have been well intentioned, but was misguided, inappropriate, and developmentally harmful. The second trauma occurred when he was exposed to internet pornography somewhere between age eight and ten and then, lacking any semblance of adult supervision, continued to view pornographic material in a compulsive fashion. For a child of that age, pornographic material would be frightening, confusing, disturbing, and powerfully imprinting upon the brain. The pornographic material, soon paired with masturbation, stimulated a precocious eroticism of an addictive nature. Masturbation to porn became Mr. Fox's outlet for all the rage he could not express any other way. Drug use was Mr. Fox's other outlet. Marijuana soothed his depression and anxiety and made him feel 'normal'.

Exhibit A at *7. Dr. Smiths report goes on to note that generally, Mr. Fox has remained in a prolonged adolescent stage which is a pivotal part of the offending behavior.

> Given his very real powerlessness and inefficacy, it is not surprising that in the on-line relationship with his victim, he has acted out with someone more vulnerable than he is, play-acting the role of the dominant, controlling, and sadistic partner in the dyad. This is a role that completely eludes him in reality.

Id.

In reviewing Mr. Fox's social history, Dr. Smith goes on to note that in addition to early childhood events that affected his development, Mr. Fox also showed indications of pornography addiction, chronic low-grade depression and anxiety, and a substance abuse history. While each of these factors in no way excuses Mr. Fox's behavior, they do assist

11

the Court in gaining some insight and context to the behavior itself. Accordingly, the Court should take this personal history into account in contemplating the appropriate sentence in this case.

### 3. The Need for Sentence Imposed-18 U.S.C. § 3553(a)(2)
#### A. Need to reflect seriousness of the offense, promote respect for law, and provide just punishment for the offense

In the instant case, the seriousness of the offense cannot be understated, and significantly is appropriately reflected in the proliferation of strict mandatory minimum sentences for child pornography offense. In the instant case, Mr. Fox is subject to a mandatory minimum sentence of 15 years and a maximum of 30 years. As the Court is aware, this is Mr. Fox's sole criminal conviction and only arrest. The offending behavior in this case is the result of an inappropriate online "relationship" that lasted approximately a year and a half.

Mr. Fox was compliant with law enforcement from the time of his arrest, consenting to search his property and cooperating. Mr. Fox went into custody without incident where he has remained since December 2017. Moreover, Mr. Fox has accepted responsibility for his actions by pleading guilty to the charged conduct. The imposition of a sentence below the advisory guideline recommendation of 324 months would still promote respect for the law and provide sufficient deterrence for Mr. Fox and others. Accordingly, Mr. Fox would ask that this Honorable Court impose a sentence of 180 months consistent with the legislative intent in establishing mandatory minimum sentences.

#### B. Afford adequate deterrence, protect public, and provide training or care to the defendant

It is again important to note that following Booker, the Court has the power to examine the guidelines, the factors enunciated in 18 U.S.C. § 3553, and the individual defendant in

determining the appropriate sentence. In the instant case, the deterrent effect of the sentence in this case will be appropriately realized through the imposition of a sentence of imprisonment that corresponds with the mandatory minimum in this type of case. This term of imprisonment, paired with the substantial amount of supervised release, here an agreed term of 20 years, will not only serve the deterrent purposes of sentencing but will also work to protect the public from any potential conduct of Mr. Fox.

Additionally, 18 U.S.C. § 3553(a)(2)(D) advises courts to consider the needed treatment of the offender in question. Dr. Smith's report notes that Mr. Fox would benefit from mental health treatment, substance abuse treatment, and sex offender treatment, noting specifically that he is "very much in need of multiple modalities of treatment". Exhibit A at *7. Each of these methods of treatment can be addressed during a term of imprisonment consistent with the mandatory minimum sentences applicable in this case. None of the enunciated purposes of 18. U.S.C. § 3553 would be furthered by a lengthier term of imprisonment than is already statutorily required.

### 4. **Types of Sentences Available-18 U.S.C. § 3553 (a)(4)**

Based upon both the guideline calculation in the PSR and the offense type, Mr. Fox will be subject to a term of imprisonment paired with a term of supervised release with a litany of sex offender restrictions. As noted previously, the parties have agreed that a term of 20 years of supervised release is appropriate in this case. As stated above, based on the statutory construction this offense is subject to a minimum sentence of 15 years imprisonment, a term which is sufficient but not greater than necessary to comply with the purposes of sentencing.

### V. **CONCLUSION**

Congress has taken child pornography offenses very seriously and rightfully has established very strict and lengthy statutory sentences for these offenses. In this case, a first-time offender with no criminal history whatsoever is subject to a statutory mandatory minimum of 15 years and a maximum of 30 years. Here, Mr. Fox represents an offender who's upbringing, personal history, and specific facts set him outside the typical production and distribution type offenses. The unique situation relative to the offense, given additional context by the atypical formation of sexual awareness and behavior in Mr. Fox's normative years, sheds some light on the facts here and additionally takes Mr. Fox's case outside the heartland of those typically contemplated by the guidelines. In a post-Booker era, the advisory guideline range in the instant case is merely that, advisory. Mr. Fox would ask that this Court look both at the unique nature of this case, and also at the legislative intent and impose a sentence below the advisory range imposing a sentence of 180 months.

WHEREFORE, the Defendant, Dustin Schaud Fox, would ask this Honorable Court to grant a downward departure and/or variance from the guideline range set out within the PSR.

RESPECTFULLY SUBMITTED this 10 May 2019.

_____
GREGORY P. ISAACS, BPR# 013282
ASHLEE B. MATHIS, BPR# 034342

THE ISAACS LAW FIRM
618 South Gay Street, Suite 300
Post Office Box 2448
Knoxville, Tennessee 37901-2448
865.673.4953/(fax)673.4950
www.isaacslawfirm.com
gpi@isaacslawfirm.com

14

abmathis@isaacslawfirm.com

## CERTIFICATE OF SERVICE

It is hereby certified that a true and correct copy of the foregoing pleading was filed electronically. Notice of this filing be forwarded via the Court's electronic filing system to all parties on the electronic filing receipt and/or by hand-delivery or by placing a true and correct copy of the same in the United States Mail with sufficient postage to carry the same to its destination.

Matthew Morris
United States Assistant Attorney General
Howard H. Baker, Jr. U.S. Courthouse
800 Market Street, Room 211
Knoxville, Tennessee 37902
865-545-4167
Matt.morris @usdoj.gov

DATED this 10 May 2019.

_____
Gregory P. Isaacs